FILED

2015 Apr-29  AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| EVA BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-0304-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Eva Barnes brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income Benefits ("SSI").  (Doc. 1).[1]  This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for the disposition of the matter. (Doc. 9).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for SSI benefits on April 1, 2011, alleging a disability

---

[1]References herein to "Doc. ___" are to the electronic numbers at the top of each pleading that are assigned by the Clerk of the Court.

beginning March 1, 1999.[2]  (R. 19, 132-42).[3]  She amended her claim, alleging a disability premised on a loss of a finger; right arm and back problems; diabetes; breathing difficulties; and seeing problems beginning April 1, 2011.  (R. 19, 157).  On November 2, 2012, following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff her disability benefits, concluding that she is not disabled under the Social Security Act.  (R. 29).  The Appeals Council declined to grant review of the ALJ's decision on December 17, 2013.  (R. 1).  Plaintiff then field this action for judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one. "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The plaintiff must demonstrate that the decision of the Commissioner is not supported by substantial evidence. *See, e.g.*, *Allen v. Schweiker,* 642 F.2d 799 (5th Cir. 1981).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).  The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v.*

---

[2]This was Plaintiff's second application for benefits.  Her first applications for disability insurance benefits and SSI was filed on November 10, 2009.  The Administrative Law Judge found on March 10, 2011, that Plaintiff suffered from obesity, benign hypertension, asthma, diabetes, a history of a left lateral synovial cyst in the lumbar spine requiring no surgery and a history of traumatic amputation of the right little finger in an industrial accident.  (R. 68).  He further found that Plaintiff had the residual functional capacity to perform medium work with certain limitations.  (R. 69).  Ultimately, he concluded Plaintiff was not disabled under the Social Security Act.  (R. 72).

[3]References herein to "R. ___" are to the administrative record located at Document 8 (Answer of the Commissioner).

*Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1982))(internal quotations and other citations omitted).  As noted above, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145.  Accordingly, "[n]o … presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;
(2)     whether the claimant has a severe impairment;
(3)     whether the impairment meets or equals one listed by the Secretary;
(4)     whether the claimant is unable to perform his or her past work; and
(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of

disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*

## IV.  DISCUSSION

### A.  Facts

Plaintiff was 48 years old when she filed this claim and 50 years old at the time the decision was issued.  (R. 16, 27 & 132).  She has a high school education.  Her past relevant work includes stints as a short order cook and furniture worker, including jobs as a wiper, assembler, hand sander, and drum sander.  (R. 27, 52-54, 56 & 58).  Plaintiff asserts that she cannot work due to an amputated finger, right arm and back problems, diabetes, difficulty breathing, and vision problems.  (R. 157).

The ALJ found Plaintiff has severe impairments, including cervical degenerative disc disease with radiculopathy, degenerative disc disease of the lumbar spine, degenerative joint disease of the left ankle, ulnar neuropathy of the right upper extremity with shoulder impingement and tendinopathy, obesity, and an amputated little finger of the right hand from a 1984 accident.  (R. 21).  He determined that her vision problems, hypertension and diabetes were non-severe impairments.  (R. 21-22).  He also found no medically determinable mental impairment.  (*Id.*)  He further found that Plaintiff retained the residual functional capacity ("RFC") to perform light work and

to occasionally lift and/or carry, including pushing/pulling, 20 pounds

4

occasionally and 10 pounds frequently with occasional use of the right upper extremity.  [Plaintiff] can stand and/or walk, with normal breaks, for up to 6 hours in an 8-hour workday.  She can occasionally climb ramps or stairs, stoop, crouch, and crawl and frequently balance and kneel, but no climbing of ladders, ropes, or scaffolds.  [Plaintiff] should avoid concentrated exposure to extreme cold or heat, humidity, vibrations, fumes, odors, dust, gases, and no work around hazardous machinery or unprotected heights.

(R. 22-23).  Premised on the testimony of the vocational expert ("VE"), the ALJ further found that, considering Plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in the national economy.  (R. at 27-28).  Whereupon, he determined Plaintiff was not disabled.  (R. at 28).

### B.  Plaintiff's Claims

#### 1.  Sedentary RFC

Plaintiff asserts that the ALJ's RFC assessment "would better comport with a sedentary RFC" given his finding that Plaintiff should be restricted to occasional use of the upper right extremity and his finding of obesity as a sever impediment.  (Doc. 11 at 6-7).  She agrees that Medical-Vocational Rule 201.14 might have applied favorably to her after her fiftieth birthday, which occurred three months before the ALJ issued his decision if the ALJ had determined her RFC to be for a full range of sedentary work.  (*Id*. at 7).  Additionally, Plaintiff states that her other impairments would further reduce her RFC and affect her stamina and pace.  (*Id*.)  The Commissioner retorts that substantial evidence supports the ALJ's RFC assessment (a reduced range of light work) and the ALJ's RFC determination at Step Five that Plaintiff could perform other work and was not disabled.  (Doc. 13 at 5-10).

Because of Plaintiff's RFC and the requirements of her past relevant work as a short-order cook and in the furniture industry, the ALJ determined that she could not perform her past relevant work.  (R. 27).  This required that he determine in Step Five if Plaintiff could perform

5

other work. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  At this juncture, "the burden temporarily shifts ... to the Commissioner....  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform...."  *Id.*, 245 F.3d at 1278, n.2.  "In order to be considered disabled, the claimant must then prove that [s]he is unable to perform the jobs that the Commissioner lists."  *Id*.

The ALJ initially looked to the Medical-Vocational Guidelines ("the Grids") to see if they might direct a conclusion of "disabled" or "not disabled" in Plaintiff's situation.  (R. 27-28).  Because Plaintiff had limitations precluding the strict application of the Grids, he used the Grids only as a framework for his decision.  (*Id*.)  *See Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (stating that "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills") (emphasis in original and citations omitted).  Accordingly, he turned to the VE for assistance in determining whether other work exists for Plaintiff.  *See id*.

At the hearing, the ALJ asked the VE to assume an individual with Plaintiff's vocational profile and RFC as found by him.  (R. 57-58).  He then asked the VE whether such an individual could perform other jobs.  (R. 60).  The VE responded that the individual could perform light, unskilled jobs such as machine tender, bakery conveyor line worker, and rental clerk, which were of substantial number in the State and national economies.  (*Id*.)

Plaintiff has failed to demonstrate that she cannot perform the jobs identified by the VE and determined by the ALJ.  First, Plaintiff has not assailed the VE's determination that she could perform the identified jobs even with the upper right extremity limitation.  Second, with

regard to obesity, the ALJ considered SSR 02-1p,[4] and found that while Plaintiff was obese,[5] no treating physician reported that her weight significantly limits her or causes her any problems

_____

[4]While obesity is not a listed impairment, an ALJ

is required to consider obesity in the analysis of a claimant's overall medical condition. *See* SSR 02–1p.  Social Security Regulation 02–1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant "from doing past relevant work and other work that exists in significant numbers in the national economy." SSR 02–1p. The Regulation also states that:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing.  We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing....

> We may also find that obesity, by itself, is medically equivalent to a listed impairment....  For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence....

> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

SSR 02–1p.

*Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012).

[5]There is no dispute that Plaintiff is obese.  She is approximately 5 feet 2 inches tall and weighs between 200 and 232 pounds.  (R. 24).

with musculoskeletal impairments.[6]  (R. 24).  Accordingly, he determined that there was "little [if] any evidence to suggest [Plaintiff's] weight results in any limitations greater than those stated in the [RFC]."  (R. 25).  Plaintiff's challenge to the ALJ's RFC determination fails to demonstrate a lack of substantial evidence supporting the same.

### 2.   Failure to Develop the Record

Plaintiff next complains that the ALJ failed to obtain a medical source opinion ("MSO") to adequately develop the record.  (Doc. 11 at 8).  In essence, she argues that the ALJ should either have requested and considered the opinion of a medical expert or obtained another consultative examination because the opinion of the sate agency medical consultant, to which the ALJ gave substantial weight, was issued a year before Plaintiff underwent nerve conduction studies showing cubital tunnel syndrome and an evaluating neurologist assessed her with upper extremity pain.  (Doc. 11 at 8-11).  The Commissioner retorts that the ALJ properly developed

---

[6]The ALJ supported this finding by stating:

... the record revealed that no physician treating [Plaintiff] reported that [Plaintiff's] weight significantly limited her or caused her any problems with musculoskeletal impairments.  [Plaintiff] was not referred for weight loss nor was it noted that [Plaintiff's] obesity caused her physicians' concern with frequent discussion or advice that it was imperative for her to lose weight.  [Plaintiff] has alleged no functional difficulties or limitations due to her weight.  Though [Plaintiff] has this severe impairment, it, presently has not in combination with her other impairments impacted on her musculoskeletal system or general health as to cause [Plaintiff's] treating doctors to diagnose her with impairments, secondary to obesity or impairments in combination with the obesity (SSR 02-01p).  The undersigned finds that [Plaintiff's] impairments, including obesity, do not restrict her ability to perform routine movement and necessary physical activity within a light exertional work environment.  Clinical examinations showed [Plaintiff's] gait as normal with full range of motion of the hips, knees, and ankles and normal heel and toe weight bearing....

(R. 24-25 (citation omitted)).

the record because the determination of an RFC is an assessment " 'based on all the relevant evidence in [Plaintiff's] case record' and not simply [based] on a physician's opinion." (Doc. 13 at 10 (citing 20 C.F.R. §§ 404.1546(a)(1), 416.945(a)(1))).

The analysis of this claim must begin with the premise that "[t]he ALJ 'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.' " *Castel v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1269 (11th Cir. 2007)). The RFC is an assessment "of all Plaintiff can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing the RFC premised upon all of the relevant evidence in the case record, including the medical evidence. 20 C.F.R. §§ 404.1546(d), 416.945(a)(1) & (3), 416.946(c). "However, there must be a showing of prejudice before it can be found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). An ALJ is not required to order a consultative examination or to obtain medical expert testimony when the record contains sufficient evidence to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources."); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (the record "was sufficient for a decision and additional expert testimony was unnecessary").

In the present case, the ALJ's review was extensive and well-reasoned. Plaintiff has not shown that the record is inadequate. In June 2011, Dr. Krishna Reddy, a state agency medical

consultant, opined that Plaintiff could "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, occasionally climb ramps or stairs, stoop, crouch, and crawl, frequently balance and kneel, and never climb ladders, ropes or scaffolds." (R. 26, 322-28). She also opined that Plaintiff "should avoid concentration (sic) exposure to cold, heat, humidity, vibrations, and fumes and all exposure to hazardous machinery and unprotected heights." (*Id*. at 26-27, 322-28). Her opinion was affirmed by Dr. Stephen Burge, another state agency medical consultant, in June 2012 upon his review of the file at that juncture. (*Id*. at 27, 328). These opinions were considered by the ALJ. He found them to be consistent with the objective medical evidence and findings on clinical examination. Accordingly, he gave them significant weight. (R. 26).

In addition, the ALJ considered that Plaintiff had EMG/nerve conduction studies done in May 2012 by Dr. Sheri Swader. They showed "right ulnar neuropathy with evidence of chronic motor axonal loss and reinnervation" and "no evidence of right upper extremity radiculopathy or myopathy and no evidence of a diffuse peripheral neuropathy." (R. 24, 400). Plaintiff was referred to Cullman Regional Orthopedics and Sports Medicine ("Cullman Regional") for evaluation. (R. 24, 413). Her right hand was x-rayed. The x-ray and evaluation revealed cubital tunnel syndrome with normal bony architecture without evidence of impingement on her right wrist. (*Id*.) Plaintiff was also diagnosed with right thenar muscle pain and rotator cuff tendinitis. (R. 413). The Cullman Regional records show the following "[p]lan":

> .... With near complete resolution of her symptoms with intraarticular injection in her right shoulder at last visit, we will repeat this injection and have her resume her home exercise program twice daily. Will see her back in one month for reevaluation. If continued symptoms, further discussion for cubital tunnel release may be warranted. However, physical exam findings at today's visit do not indicate need for immediate release. Also, comparison of previous nerve conduction studies show fairly significant change. We would like to give this

some additional time to resolve before proceeding with a surgical release.

(*Id*.)  The ALJ noted that

> abnormal findings on clinical examination were generally limited to reduced
> range of motion of the spine, 4/5 grip strength in the right upper extremity,
> slightly decreased sensation in both feet, limited squat and arise, tenderness of the
> cervical and lumbar spine and right shoulder, and mildly positive impingement
> signs.  However, examinations also showed normal range of motion in the hips,
> knees, ankles, shoulder, elbows, wrists, cervical spine and fingers, normal
> dexterity, 5/5 grip strength of the left upper extremity, normal gait, negative
> Spurling and Rhomberg testing, intact CMS testing, negative examinations of the
> right wrist and elbow, negative apprehensions and crossed arm adduction testing
> with no evidence of discernible weakness, normal heel-toe walking, and no
> cervical adenopathy....

(R. 24 (citations omitted)).  Premised on this information, the ALJ concluded that "the objective

medical evidence [did] not demonstrate abnormalities which would interfere with [Plaintiff's]

ability to perform the range of work identified" in the RFC, which included only occasional use

of the upper right extremity.  (R. at 24).

Plaintiff argues that Dr. Swader's notes on June 19, 2012, that disability "is likely to be

helpful to her" and that Plaintiff's continuing and persistent difficulties with her right arm "will

likely make her an unreliable employee" are significant.  (Doc. 11 at 9 (citing R. 393)).

However, what these references fail to consider is that additional evidence demonstrates that

Plaintiff's right shoulder situation improved dramatically by July 18, 2012.  (R. 415).  In

Plaintiff's July 18, 2012 follow-up visit with Dr. David Dueland at Cullman Regional, he noted

that Plaintiff received a second steroid injection in her rotator cuff on June 20, 2012, because her

symptoms had returned.  (*Id*.)  At this July visit, however, Plaintiff stated that "the shoulder is

fine."  (*Id*.)  Dr. Dueland noted that Plaintiff "occasionally has some discomforts (sic) in the

thenar eminence.  Numbness is improved significantly as well."  (*Id*.)  Examination of Plaintiff

revealed a full range of motion in the shoulder without impingement, good strength, no cubital

tunnel and Tinel's, no intrinsic wasting, and "some discomfort in the base of her thenar muscle with good muscle definition and strength." (*Id*.) Dr. Dueland's impression was that Plaintiff had "[m]arked improvement." (*Id*.) He planned to return her to Dr. Swader's care, noting that "Lyrica and other medication she has taken have been effective." (*Id*.)

Premised on the entire record, particularly the foregoing, the ALJ found that Plaintiff's "allegations of disabling pain and limitation are not consistent with treatment notes showing improvement of symptoms and no recommendations for surgical intervention." (R. 25). He also noted that, in spite of Plaintiff's claim of "disabling levels of pain so severe they disrupt her sleep, [Plaintiff] has not requested a different physical therapy plan or an alternative treatment modality, such as a referral to a pain clinic, biofeedback, or a TENS unit. There is no indication in these treatment notes that [Plaintiff] requested any changes to her medication regime or sought alternative pain medications if her medication regime was not effective." (*Id*.) The ALJ's RFC is appropriate with regard to Plaintiff's right upper extremity pain. This aspect of her challenge (doc. 11 at 9) is without merit.

To the extent Plaintiff argues that a medical expert "might have better assisted the ALJ in adequately addressing and deriving a comprehensive RFC based on all of the impairments of record which would reasonably affect stamina and ability to perform work related activities on a regular and continuous basis pursuant to 20 C.F.R. § 416.945" (doc. 11 at 10), the court finds that Plaintiff has not shown that the absence of an additional opinion prejudiced her claim. *See Graham*, 129 F.3d at 1423; *Kelley v. Heckler*, 761 F.2d 1540-41 (11th Cir. 1985) (requiring a showing of prejudice). Additionally, Plaintiff has failed to show that the ALJ was obligated to do more to develop the record. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *Kelley*, 761 F.2d at 1540.

12

**V.  CONCLUSION**

The Commissioner determined that Plaintiff was not disabled under the Social Security Act.  For the reasons set forth above, the undersigned finds that the Commissioner's decision is due to be affirmed.

**DATED**, this the 29th day of April, 2015.

**JOHN E. OTT**
Chief United States Magistrate Judge

13